In the Matter of the Claims of LOUIS S. ACQUISTO et al., Respondents. MARTIN P. CATHERWOOD, as Industrial Commissioner, Respondent, and GENERAL MOTORS CORPORATION, Appellant.

In the Matter of the Claims of WALTER KROHNERT et al., Respondents. MARTIN P. CATHERWOOD, as Industrial Commissioner, Respondent, and GENERAL MOTORS CORPORATION, Appellant.

Third Department, May 6, 1966.

*Raichle, Moore, Banning & Weiss* (*Arnold Weiss* of counsel), for appellant.

*Lipsitz, Green, Fahringer, Roll, Schuller & James* (*Richard Lipsitz* of counsel), for claimants-respondents.

*Louis J. Lefkowitz, Attorney-General,* for Martin P. Catherwood, as Industrial Commissioner, respondent.

REYNOLDS, J. This is an appeal by the employer from decisions of the Unemployment Insurance Appeal Board awarding the claimants unemployment benefits.

The claimants, employees of the employer's Buffalo, Tonawanda and Massena plants, went on strike on September 11, 1961 in a dispute over both national and local issues. Negotiations commenced forthwith and at the Buffalo plant a "memorandum of understanding" was signed on September 16, this document concluding the strike there, subject to ratification which was forthcoming. Operations were started up at Buffalo on September 18, but it was not until September 26 that work was fully resumed. At Tonawanda a memorandum of understanding was signed on September 24, operations were started on that date, and were fully resumed on September 28. At Massena the memorandum was signed on September 20, work was started that day and was fully resumed by September 27. A national memorandum of understanding was signed on September 20 and a full agreement was signed on September 26 with ratification coming on October 2. The sole question presented here is whether the claimants are barred by virtue of subdivision 1 of section 592 of the Labor Law from receiving unemployment benefits for the period between the signing of their local memorandums and the resumption of full operations at their respective plants.

The employer urges initially that despite the earlier local settlements and the fact that the plants actually resumed some operations, the industrial controversy did not terminate until September 26 when the full national agreement was signed and thus that no benefits could be accrued prior to that date. We cannot agree. In *Matter of George* (*Catherwood*) (14 N Y 2d 234, 239–240) the Court of Appeals stated:

"The statute in question [§ 592, subd. 1] expressly limits such considerations to single 'establishments'. * * *

"The denial of benefits where unemployment results from a dispute 'in the establishment in which [the claimant] was employed' is strictly limited by *Matter of Ferrara* (*Catherwood*) (1 N Y 2d 1) to the geographic location of the employment regardless of what the Appellate Division correctly recognized here as a highly integrated nationwide industry * * *. In the face of the *Ferrara* case it cannot be said that the several plants involved in this case constitute a single establishment. The Appellate Division avoided the establishment concept and simply regarded participation in the nationwide strike to be an adequate predicate for a holding of voluntary unemployment until all plants were again in operation. While statutes in other

States may be framed differently (*United Steel Workers* v. *Board of Review,* 12 Utah 2d 136), in this State participation in a multi-establishment strike is not the criterion of an individual's right to unemployment benefits. As the *Ferrara* case shows, nonparticipants within a struck establishment are subject to the same suspension of benefits as those who are engaged in the industrial controversy. So, conversely, employees in an establishment in which no dispute presently exists, even though they were participants in the initial multi-plant controversy, are not denied benefits where their unemployment is traceable solely to a controversy in another establishment.''

Thus quite clearly in dealing with the benefit rights of a given worker at a given plant, we are not concerned with what developed nationally, but only with what transpired locally.

Appellant additionally asserts that benefits are not available if unemployment is due to a necessary gradual resumption of full operations in an establishment. It is urged that since the strike caused the shutdown and only a gradual resumption of operations was possible thereafter, the claimants remained out of work '' because of a strike '' which was not therefore '' terminated '' until full operations resumed. While other jurisdictions have embraced this position (*Leach* v. *Republic Steel Corp.,* 176 Ohio St. 221), we find no clear holding determinative of this question in this State. *Matter of George* (*supra*), while it holds that unemployment due to an industrial controversy at another establishment does not preclude benefits if the controversy at the employee's establishment is settled, does not directly answer this question. Nor is the admittedly analogous case of *Matter of Vingoe* (*Bethlehem Steel Co.*) (285 App. Div. 160) a binding precedent in the instant case since in *Vingoe,* unlike the present case, there was no termination of the labor controversy. As this court noted in *Vingoe,* the Presidential seizure, while averting an actual work stoppage, did not terminate the labor controversy.

Faced then with a question of relatively first impression in this State, we are constrained to find that benefits were properly awarded. The labor controversy here invoked was clearly terminated in the sense that the dispute between labor and management had been settled, and, therefore, the legislative purpose in denying financial assistance during the course of the controversy had been satisfied. Thus even though the unemployment involved was obviously causally connected to the labor controversy, we find no basis to hold that the labor controversy was not terminated within the meaning of subdivision 1 of section 592. The lack of work occasioned by the necessity for gradual

resumption of production is merely an incident of the particular industry which is outside the purview of the statute and over which neither side has any control. We can find no compelling reason here " in attributing a vicarious voluntariness to the post-settlement unemployment " in view of the Court of Appeals' rejection of such a position in *Matter of George* (*supra,* p. 239).

The decisions should be affirmed.

GIBSON, P. J., HERLIHY, TAYLOR and AULISI, JJ., concur.

Decisions affirmed, with costs.